Good morning, Your Honors, and may it please the Court, Sarah Hinger on behalf of the Plaintiff's Appellants. There are three points that I'd like to address this morning. First, the Plaintiffs have more than met the standard of establishing a substantial risk of injury. Under the South Carolina Disturbing Schools and Disorderly Conduct laws, they attend school and go about their ordinary lives each day under the threat of an arbitrary arrest. And this, in a very basic way, constrains their freedom and their liberty rights. The second point that I'd like to discuss today is that if not in this case where Plaintiffs have already experienced being arrested, there could be no circumstance in which a court would be able to provide forward-looking relief against the continued application of a law that is clearly unconstitutional. And the third point I'd like to address this morning is that the Plaintiff Girls Rock has standing both on its own behalf as an organization and on behalf of its youth members. For these youth members, the organization provides a very critical platform through which they can make their interests and their voices heard. And so turning to my first point and a very important aspect of this case, this is a challenge to state statutes. And these laws order the use of the state's law enforcement powers in a manner that can only be arbitrary. As laws, we presume that they will be enforced and carried out, and indeed the Attorney General's indicated that these laws should be enforced to the broadest extent possible. As students in South Carolina, Plaintiffs are placed directly subject to the terms of these laws. And the injury here is clear. The terms of these laws make it a crime for a child to be found disturbing, obnoxious, disorderly, or boisterous. Yes. Yes. Put very simply. I would like to enjoin some children from being obnoxious beyond the scope of my jurisdiction. To follow up on your point, there have been just multiple cases, a compendium of cases cited on both sides. And I note that we're living in this pre-enforcement land of constitutional law. Although your point is well taken, this is a case of, isn't it true, every named plaintiff has already had this statute enforced against him or her. Is that right? Yes, that's correct. Is there any case cited by your worthy opposition where individual plaintiffs have already been actually prosecuted under statutes? No, Your Honor, I don't believe there is. And in fact, the Supreme Court in this court, the question of whether there is a substantial risk of future and ongoing injury, the evidence of past enforcement has been a critical piece of evidence. Indeed, the Supreme Court in the Susan B. Anthony v. Dry House case found the risk was substantial because Susan B. Anthony organization had already been threatened with prosecution. And in that case, the evidence found that there were eight to 20 complaints made a year. And on this evidence, it was clear to the court there was a substantial risk. That was also the case in Stiefel v. Corso's. And can I ask you somewhat of a procedural question? If we find we reverse on individual standing and remand, but as to organizational or associational standing on this record, is frankly, I think a harder road for you to hoe. Was there any discovery, jurisdictionally based discovery done below? No, Your Honor, there's been no discovery. Okay. So to the extent some of the gaps need to be filled in with regard to whether Girls Rock was under Havens perceptibly impaired, for example, as an organization, would it be your position that you could then, if it were reversed and remanded and we provisionally left that question open for further discovery, you would agree with me that maybe more facts might be appropriate to determine whether Girls Rock has either organizational or associational standing? If that were the court's opinion, we certainly would be able, through discovery, to establish more facts. Of course, we do believe, as we set out, that there are sufficient facts in this case. Your argument, as I recall, was that the fact that Girls Rock was diverting resources to defending some of the persons targeted by this statute was impacting your resources. Is that the argument that you would make? Is that the primary peg on which you would hang your hat with respect to Girls Rock standing here? Your Honor, I don't think it's the primary piece of evidence. It is certainly a part of the evidence. So the standard that Girls Rock would need to meet as an organization is whether or not the continued enforcement of these laws works a harm to their mission and creates a drain on their resources. And so Girls Rock was started, founded on a premise and a desire of fostering youth leadership and youth contributions to their community. In turn, it found that it needed to address and attempt to reduce youth involvement with the criminal justice system because the consequences of that directly undermine youth's ability to gain leadership skills and become strong leaders in their community. So the work that Girls Rock has done now, specifically related to these laws and the Supreme Court in particular, includes not only addressing the fallout of these laws being levied against their young members, including spending their volunteer hours accompanying them to court, addressing various issues, but also engaging in a grassroots community effort to educate the public, as was the case in the Supreme Court case of not just about inquiries of what the law is, but to understand why this law is troubling, why it's problematic, what students really need, and endeavor to bring the community into a position to join an argument that this law should be repealed. Yes, Your Honor, there are two points from Lane v. Holder. The first is that the organization in Lane v. Holder argued that its resources were expended only in answering questions, inquiries, about how or whether the law would operate to impact its members' activities. And the second point was that in that case, the law in question regulated not the organization or its members directly, but regulated the licensed gun sellers themselves. So the injury to any individual, in addition to the organization, was twice removed. In other words, while the regulation meant that licensed gun sellers would need to bite charge fees and there might be an additional administrative burden to the ability to exercise one's Second Amendment rights, it didn't actually and directly constrict those rights, which is the rights that the organization was concerned with. Counsel, do you agree that we're looking at this case on review, the factual predicate is confined to the four corners of the complaint? Yes, Your Honor, and to all of the relevant evidence that would be presumed and would support those arguments. So, for example... So on that point, just because I want to pull this thread with regard to Girls Rock, the complaint itself notes significant time and resources spent in accompanying these girls to court and diversion of time and energy away from the mission to deal with these, as you put it, facially invalid laws. But there's no real factual predicate for how much of this organization, how much of the pie has actually been devoted to this aspect of your mission as opposed to anything else, which, in my view, makes it hard to do the analysis that Havens requires, which is, is it perceptibly inherent? Where else in the record, if anywhere, is there more of a treatment of how much Girls Rock has really been put out, and not just in money, but in diversion that's programmed in? Yes. So I think there's two points. There is a declaration from Girls Rock which substantiates and supports those statements in the complaint, which is in our record. The second point of information that is in our complaint, Girls Rock supports students and its members are students in Charleston, South Carolina. Now, in Charleston, South Carolina, as our statistics show... as to whether or not these students are actually members or clients. Doesn't that make a difference? It makes a difference for the second way that Girls Rock can establish standing, which is on behalf of its members. Those members are young people who have experienced arrest and are... some of whom have experienced arrest. And they are members? And they are members, yes. So as the Supreme Court recognized in... But that only matters with respect to the consideration of Girls Rock's standing, whether they are members or not of Girls Rock? Yes. Yes, Your Honors. And I would note also that as long as one individual is found to have standing in this case, it clearly satisfies the question of justiciability of the argument for the court. So it may be that the court doesn't even need to reach this position. But we would argue, just to finish my point there, that they are members. It's not a fixed and precise question of form, but a matter of practice. And Girls Rock is directly influenced by and associated with their interests. So young people who have been through Girls Rock's initial mentoring program are encouraged to remain active, become members... become mentors, excuse me, themselves to younger people, and they directly design and engage in the organization's advocacy efforts. Is Girls Rock a membership organization? It has, at the very least, the indicia of membership, and that is the standard as set out in the Supreme Court's decision in Hunt. Does the complaint speak to that at all? I believe it does, Your Honor. Can I get you back to this issue of individual standing for the students? So Clapper and its progeny make the point that in order to prove an injury in fact, the injury must be imminent, meaning that there has to be certainly impending, a substantial risk of injury. And I'm having trouble fitting that rubric into the facts of this case where you allege that any individual plaintiff satisfies that test. Aren't you merely speculating as to the risk of arrest for any one individual plaintiff? That's not enough, I don't think. Thank you, Your Honor. We wouldn't be speculating. So the question of whether or not there is a substantial risk here, as the Supreme Court has stated in Susan B. Anthony and other cases, that a plaintiff is not required to submit themselves meekly to be arrested before they can raise a constitutional challenge. So the substantial risk standard is measured in contrast to what the Supreme Court has stated as purely a hypothetical, something that is imaginary or speculative. But that is not the case that we have here. There is a well-established record of how these laws are enforced. The court is not required to speculate. And, in fact, plaintiffs are acutely aware of this risk because they've experienced it themselves. And so there is that substantial measure, which ultimately goes to whether or not this court can decide the case on more than speculation. And we do believe there is. In addition, our plaintiffs face the continued injury of having these arrests on their criminal record where they can be levied against them in any future proceeding, potentially in matters of employment or education. And even if they are able to affirmatively seek expungement, it would require them to spend some $300 to remove this charge from the record. And so there are a number of ways in which our plaintiffs are directly injured and clearly meeting the standard of a substantial risk of injury in this case. We do think that this satisfies the justiciability of the issues in this case, and we'd ask for this court to reverse the lower court's ruling. Thank you very much. You have some time for rebuttal. Mr. Smith? Thank you, Your Honor. I am going to be arguing general issues of standing applicable to all defendants. And there was a peculiar statement in the plaintiff's reply brief that the Attorney General was not contesting standing. Perhaps they were intending to refer to the arguments of the individual law enforcement officers, but the Attorney General most certainly is contesting standing, as are all the defendants. Ms. Sinn will address arguments that special arguments pertinent to several of the law enforcement officers, but all the defendants challenge standing. And the judge found a lack of standing as to all defendants. Didn't the district court use the wrong standard? I don't believe so, Your Honor. In fact, I think the standard he used, I believe, was imminent threat, but substantial risk has also been used as a standard. But I believe he cited Susan B. Anthony, and the plaintiffs patently fail to establish standing under Susan B. Anthony. Susan B. Anthony deals with a case of threatened enforcement, and that's essentially what they're complaining of here, that they've got a risk of future enforcement. And Susan B. Anthony said in order to establish injury in fact for purposes of future threatened prosecution, they've got to allege that they intend to engage in a course of conduct affected with the constitutional interest, and they simply don't do that. Don't the individual plaintiffs plead that they are going to continue to protest police activity as they have in the past that resulted in their individual arrests and prosecutions under these particular statutes? Respectfully, Your Honor, I would stand corrected, but I don't believe that that was in the record that they were protesting police activity. And, in fact, I don't believe as to any of the facts alleged as to any of these plaintiffs that they were engaging in what would be termed a peaceful protest consistent with tinker. But you do acknowledge that we are bound by the facts as set forth in the complaint? You've got to accept the facts as alleged in the complaint as true for purposes of the motion to dismiss that was made here. But in any event, the facts as pleaded, I don't believe, meet standards that would under tinker. Tinker was an enforcement of a school policy. It wasn't a criminal statute that prosecutes children as young as eight. You're correct, Your Honor. So isn't that really not directly applicable here? It is applicable, Your Honor, because the Supreme Court of South Carolina in the N. Ray Amir case, and we're getting a little bit into the merits here, said through Section 420 that disturbing the school statutes in a manner that is consistent with tinker. And they said that it was not intended to prohibit protected speech. And so, therefore, 420 can't intrude on protected speech under Amir. So they are not, can't allege any intent to engage in conduct affected with constitutional interest under this statute when the statute has been interpreted and narrowed so that it excludes, would exclude anything that would apply to protected speech. Is your position, though, that an individual plaintiff would have to be arrested, criminally charged, in order to have standing? Your Honor. Because here you have individuals who have been criminally charged under the statute. They have, Your Honor, and I believe that the court can take notice from the briefs and the order of the court that all of these charges have been dismissed except for, I believe, one of them who was adjudicated and placed on probation. But one would be enough, would it not? But where there had, no, Your Honor, it would not be because they were charged with a specific incident of conduct. They would have to allege that they were. In violation of a specific statute, in violation of one of the statute conditions. That's correct. But a past prosecution is not sufficient in and of itself for standing. So if past prosecution isn't enough and not being prosecuted isn't enough, who would have standing to challenge the statute in your view? If somebody was engaged in a course of conduct, as were the Susan B. Anthony plaintiffs. In the context of these facts. In the context of these facts. They have not alleged a course of conduct that would be sanctioned, that would be able to determine for purposes of Susan B. Anthony, that there is a conduct affected with the constitutional interest. So they would have to violate the law. I'm trying to understand where, how someone would derive standing to challenge a statute that is, I found quite notable in its breadth. Well, your honor, I believe that that has been narrowed down significantly by Amir. Not only as to the speech, but also it said that it had to be conduct that materially disturbs normal school activity. It's not just mild misbehavior. It's got to materially disturb normal school activity. And so we believe that Amir places a construct on the statute that puts it within constitutional means. And they have not alleged any conduct that would be affected with the constitutional interest. So they have to allege conduct that would bring them within the scope of the statute to establish standing? Let me say, for example, that if it was affected with the constitutional interest, if they were to allege that they had been prosecuted for a particular type of conduct, and they said that they were going to continue to engage in that conduct, maybe they were a part of an organization in which there were rowdy demonstrations, not just peaceful protests or spoken words, but acting out, jumping up and down, running down the halls, matters such as that, and that they had been prosecuted for that and they intended to continue to engage in that, arguably, I'm not conceding it, that would meet Susan B. But here's the thing with the plaintiffs did more. They actually pled conduct that is not, to some reasonable minds, interfering with school at all. They pled conduct where they were just merely protesting what was going on before them, and they were, quote, students have been arrested and charged with disturbing schools when expressing concern over police actions. That's one. The plaintiffs have also charged that the way and the manner in which this statute was applied to them chilled their speech and will have a risk of chilling their speech going forward. Using your very test, doesn't the application of this statute affect the constitutional interests of these plaintiffs? No, it does not. First of all, I believe the facts as pleaded as Kenny did not show that this was a, that she was engaging in protective speech. She was calling out in class while a student was being taken out. And she's no longer even in school. And she hasn't alleged that she's going to continue to engage in such conduct. It would be speculative and hypothetical and very attenuated to claim that she is going to be engaging in conduct that would be effective with the constitutional interests and be prescribed under the statute. So if these students say that they are going to gather as a form of protest and curse within the protected area of the school, which would be violative of the statute as written, would that be sufficient? Well, they didn't allege that. My question was, I'm trying to understand the boundaries of your standing argument are very hard for me to discern. So I'm trying to understand. The boundary is that they have to allege conduct that is affected with the constitutional interests and prescribed. And the threat has got to be substantial, too. It can't be just a slight threat or risk. It's got to be substantial. If they said that they were going to do, as I posited, for purposes of the disorderly conduct law, that they are going to gather and utilize profane language for protest purposes within hearing of a schoolhouse. Well, I don't believe they allege that. But if they did, and if, for example, as I said before, if they had said they had been prosecuted for this type of protest and they were planning to continue that protest. So they have to have been prosecuted? Well, I think if, not necessarily, but they would have to allege an intent to engage in a course of conduct such as an activity that would be affected with the constitutional interests. How does my hypothetical not meet your test? That's the first question. And I have one other because you're running out of time. Possibly. Arguably it might, but I don't think they did that. And I don't think the statute is constrained by a mere reaches peaceful protest. And just one more question. The standing determinant is very different in the criminal context, is it not? Yes. So you don't have to put yourself within the reach of being charged in order to have standing? You do not have to submit to criminal charges in order to have standing, but you do have to allege that you will engage in conduct that would violate the statute and be affected with the constitutional interests. My question, the end of my question is, was going to be and is, hasn't the Supreme Court said that a person satisfies the imminent injury requirement by demonstrating that he faces a credible threat of prosecution in the criminal context, in the context of enforcement of a criminal law? I believe that there is similar language to that, but there are these particulars in Susan B. Anthony that have to be shown in order to do that. The allegation about future conduct, the prescription of that conduct, and that there is a substantial threat to it. And there's no threat here, other than the fact that these people have been arrested in the past. It's just vague, attenuated, hypothetical allocations here. The plaintiffs plead the specific instances in which they were charged and prosecuted for doing things like talking, talking to their classmate, talking to a police officer, and questioning the police officer's authority. Plaintiffs plead that. Plaintiffs also plead, quote, that these individual plaintiffs fear being charged under the if in the future their conduct arbitrarily falls under the purview of the statute according to the police officer. Why isn't that enough? They've gotten the past persecution, unlike any other case you've cited, and they plead a reasonable, credible fear of future prosecution, which under our precedent in Bartlett, using those very words, fear of future prosecution, was enough. Because it's too vague, too hypothetical. It's not a course of conduct. It can't be hypothetical by definition. It can't be hypothetical because it happened. It happened in the past, but in order to meet Susan B. Anthony, they have to allege what they're going to do in the future, and they say, well, maybe it might happen because the statute's broad, and maybe I might do it. But if you look at Susan B. Anthony, there was a specific course of conduct there. And in these other cases, there was a specific course of conduct. Isn't Susan B. Anthony so directly a facial challenge to a void-for-vagueness statute, and doesn't that matter? And the reason why it matters is your argument now is in the future, plaintiffs haven't pled that they have a reasonable fear of future persecution, prosecution. But the point is that the statute's so vague, nobody can figure out if they're going to be prosecuted in the future. Isn't that a material difference from Susan B. Anthony? No, it is not, respectfully, Your Honor, because they have not, again, the kind of conduct that they might engage in in the future, they just don't allege enough particulars about it. It's all vague, speculative. They allege that they're going to do exactly what got them arrested last time. Well, respectfully, they say they might. But that's sufficient. They can't know because they haven't done it yet. They are alleging, and we have to accept as true, that they are. But Susan B. Anthony says engage in a course of conduct. That is exactly what they've said. I think that they're talking about this might happen, maybe it might not. And I don't think that that's sufficient, Your Honor. When you say this might happen or it might not, are you talking about the actions of the police officers or the actions of the plaintiff? Because, as my colleagues have indicated, they've indicated an intent to engage in this conduct. Again, you dispute that, but the facts, the allegations of what they are, are you saying it's the actions of the police officers that matter in this context? I think it's the students might or might not engage in that conduct. It's not repetitive conduct such as in Susan B. Anthony that the court addressed. And also, there has to be a credible threat of prosecution, and we don't know that there will be. There doesn't have to be a credible threat of prosecution. There only has to be a credible fear of prosecution. The threat has got to be under. There has to be a credible fear. I'm just quoting the Supreme Court. Okay, well, respectfully, I read it as the threat has got to be substantial. I actually was reading it. I was quoting. Okay, well, I'm certain I don't question what Your Honor was reading. I see my time is up. I did have a few other points to address, but anyhow, my time is up. Thank you. Thank you. Hey, police and court. I'm Sandy Senn here representing the police defendants. I have something to say about the police defendants, but I would like to follow up just a little bit on the standing issues that you all have been addressing. First, this is not a First Amendment claim, and a lot of the questions I'm hearing make me think that just because they put it in a brief to you all that that was in the complaint. What case says they must plead a First Amendment violation as a specific claim, like a count in the complaint? Yes. How would I know what I'm defending otherwise? Because they put it in the complaint. They didn't put it in the complaint. That's what I'm trying to tell you. They said that the facially valid statute will chill their free speech and their freedom of association. They say it will chill their future conduct in that regard. How is that not preserving, through the 14th Amendment, their First Amendment claims? I did not see anything in that complaint that made me believe that that was a First Amendment claim that we were defending, and neither did the judge. But, Your Honor, following up also on some of the things that you're citing directly from the complaint, remember that they submitted a bunch of affidavits in this case that were given to the judge, and because it was a 12B1, we did not really. Can I follow up on this? Yes, ma'am. On page JA19, paragraph 2 of this complaint, the disturbing school statute also, quote, and then they enumerate how the plaintiffs were charged for that very conduct. How is that not putting you on notice that the First Amendment is in there? Well, certainly they didn't separate it out like they did all of the other claims. But if you go in and read. Is there a requirement that they do so? I just wasn't aware of that. Well, I think it would be fair in notice pleading that we at least have it, and certainly in ITBAL, they're on a higher pleading standard, especially where they are suing police. No, ITBAL is not, I mean, well, yes, a person has to be on notice. I guess it's a little, if someone says, talks about the chilling effect of a statute, it would certainly be clear, I think, to the average attorney that they're talking about expressive behavior, especially since that's exactly what they talk about. Well, that does explain, then, why most of the cases they cite were First Amendment cases versus cases such as Lyons and Hunt and Clapper. Those stand in opposite to what you were just citing a minute ago. I'm sorry, I'm not following your argument. I'm sorry, I don't understand the point you're making. Earlier you were talking about fear, that fear is enough, fear of prosecution would be enough. Credible fear of prosecution, yes. Right, and you cited, too, a Supreme Court case. I think if you also look at Lyons, which is more akin to this particular case. How is Lyons more akin? That was a single plaintiff who was stopped, traffic violation, who was then subject to an individual officer's discretion to put him in a chokehold. Nothing to do with a facially valid statute that was challenged on void for vagueness grounds. How is that on the facts? I think it's quite more on point because, just like in that case, the court determined that it was so tenuous for him to assume he's going to get pulled over again, he's going to get put in a chokehold again, all things like that. There was no law permitting or prohibiting chokeholds. I mean, you have to start with the most fundamental of issues here, which is there is a statute which, on its face, according to the complaint that we assume to be true, is void for vagueness. Well, if you take a look at the other documents which they submitted in support of their case, which is before you and was before the district judge, I submit to you that every single one of those children should have been arrested pursuant to that statute based on their own conduct because you cannot, in accordance with Tinker, violate the good student's wishes to be good and to be able to learn and to be able to have a peaceful environment. Those kids were certainly disrupted to the point that not only was a teacher unable to handle them, but they called for an SRO. I really am getting the impression, though, that what this court may be looking at is why these kids, so many of them, are getting arrested pursuant to this statute. And if the question really is should teachers rely on SROs as much, should they do it disciplinary? I don't think it's particularly useful for you to go behind the questions that we ask. My questions were very specific and directed solely to the question of standing. There was no looking. Could you remind me then? I'm sorry. Could you remind me what I didn't answer? Well, it seemed to me that perhaps I've lost track of it. But I thought that when I was discussing the matter with co-counsel, I was trying to pin down why the fact that a student has been penalized under this statute once, why an allegation that the student would engage, expected to continue to engage, in the identical conduct wouldn't create standing. I do continue to be unclear about how it could even be considered hypothetical since it happened. That was my question. It certainly did, Your Honor. But these students are not claiming, first of all, we don't even know which agency arrested them. They're not claiming that they suffered some right. Basically, they're not trying to get any type of relief other than equitable. So in order for them to get equitable relief, they need to show us why, especially when most of those kids don't even go to school anymore, that they could possibly have some type of arrest that would bring them back within the gambit of this particular statute again. And I just think that's just too tenuous. So they have to be students under the statute? They have to be. Yes, they do have to be. Not for disorderly conduct. No, they don't. Well, it could be any person. Sure, if somebody's coming on campus and, you know, could be an outsider, sure. But unless these students, former students, are going to come onto campus and create some of the same activity that they did to get themselves expelled and arrested before, then they don't really have any fear. They would have fear to worry. Otherwise, if they're not and they haven't alleged that they are going to, then there is no reason for them to think that they are possibly going to get arrested again. I see that my time's up. I didn't even get to my police stuff. You certainly didn't. And please do so. Thank you. Go ahead. And if you can do that briefly. I will try. I'm very sorry. Okay, so with respect to the police defendants, as we know, there are 14 high-level defendants having been sued. We believe that these are all nominal defendants. And because you were reviewing this de novo, we are asking this court to please take a look at it and recognize that there is no reason in the world that 14 police defendants should be defending. And under Iqbal, I believe that under Rule 8, I believe that's where the higher pleading standard comes for them. But beyond that, Rule 21, I believe it is, would give you all the ability to dismiss nominal parties because they're not necessary. This law, if it's going to be challenged, can be challenged against the Attorney General or the Governor or whomever. But these agencies, 14 of them, don't need to be coming in. And I do wonder, though, why, Your Honor, why smart ACL lawyers who know how to get standing, and that would be just to get one of these thousands of students who have claims pending to bring them in. That's how they get standing. It's very easy. So why wouldn't they do that? Or why wouldn't they amend, because they knew the issue, to say that their kids were going to come back in and disturb the schools again? They didn't do it. And the reason they didn't do it, I believe, Your Honor, is because they are trying to shortcut the process by getting you all to grant Article III standing rather than going to the legislature, which they are also doing, and having these same experts and these same statistics presented to the legislature to say, hey, this is why we think that your statute is unconstitutional. Instead, they're asking you to take a 100-year statute that's been interpreted by our Supreme Court, which has also been amended from time to time by our legislature, and say that it's unduly vague. I would submit that because of this, this is an issue that really rather should be in the legislative lane. And in addition, Your Honor, you had asked some things about Girls Rock. Girls Rock, remember, asked for DJJ referrals. They asked for them. And therefore, now that they're getting them, they're claiming to be overly burdened. I'm sorry. Are you referring now to the police officers? Well, they claim... I was allowing you to go beyond your allotted time because you hadn't been able to get to your argument about the police officers. Thank you. Only to the extent that they claim... We're not sure who Girls Rock is suing. There are three police defending agencies, and just because of the fact that Girls Rock is in Charleston County is the only reason we can surmise as to why they would have any claims against those three police agencies. So only to the extent that we don't know who did what, and therefore I was trying to argue organizational standing there, because, again, they asked to have these clients, not members. So I do see my time's up. I thank you very much for giving me a little additional time. If you don't have any more questions, I'll sit down. Thank you very much. Thank you. Ms. Hinger, you reserve some time for rebuttal. Thank you, Your Honor. I'll be brief. I believe that Your Honors have raised many of the points in our briefing that would respond. But just to highlight a couple of points, the defendants have argued that plaintiffs must state an intent to engage in a course of conduct that would be implicated with constitutional rights. While we do allege this, I also do want to point out that while this is a means of establishing a substantial risk of injury, it doesn't alter the substantial risk test, and it's not an exclusive means as in the United Farm Workers v. Babbitt case where the court said that this is a question of degree and not a precise test. And as noted in footnote 8 of our opening brief on page 24, there have been cases where there was not a constitutionally imbued interest at stake. Moreover, and most importantly, particularly where there is a vague statute, plaintiffs aren't required to state an intent to violate the law. Certainly these statutes don't require intent for them to be enforced. Ms. Singer, can I ask you a question about this issue regarding the pleading that my colleagues have raised? As I understand your position, it may be that the complaint may have been a little sparse in terms of alleging that these statutes might chill your client's First Amendment rights to engage in speech on school campuses. But did the declarations go into more detail about that? Those were part of the record, weren't they? They are, Your Honor, yes. And they do go into additional detail, which flushes out the allegations in the complaint and, as Your Honor has noted, in paragraph 2 and additionally in explaining the individual plaintiff's circumstances. And they are part of the record. Right. So this was a 12b-1 motion, and the judge was free to consider that additional evidence in addition to the complaint in deciding whether or not your clients had made out a sufficient claim of standing with respect to that particular issue. Is that right? Yes, that's correct, Your Honor. And then I just wanted to add one additional point that I didn't get to finish in response to your question about Girls Rock and the resources it expends. It operates in Charleston County.  The disturbing school statute was the number one reason that any young person in Charleston became involved with the juvenile justice system. Is this in the record? It is, Your Honors, yes. It's in the declaration of Ms. French-Marcelin in the joint appendix, and I believe it's also noted in our complaint, and I can highlight the paragraph there. My point being that were it not for this law, Girls Rock's resources in being able to reach students who are actually at risk and involved in the justice system could certainly travel much further. And if there's no further questions. And you mean resources, not just financially. You mean person power, you mean programming, you mean the individuals on the ground, correct? I do, Your Honor. The organization is primarily volunteer. I have just one maybe some might say nerdy doctrinal question because I know that the court below relied heavily on Lujan, Clapper, and Lyon. And I'll put Lyon over here for a second. One big distinction I'm seeing between Babbitt on the one hand and Lujan and Clapper on the other, Lujan and Clapper were reviewing not necessarily void for vagueness but reviewing the application of federal statute. And Lujan and Clapper following on Lujan made the very specific point that the standing consideration is quite different because of the separation of powers question that's at play in Clapper and Lujan. Would you agree on that basis alone, this court need look more carefully and closely at Babbitt and its progeny than Lujan and Clapper because we're dealing with a challenge to a state statute under void for vagueness grounds and that alone puts it in a different game? I would, Your Honor, yes. I found that you referenced about the numbers of young people referred to the Department of Juvenile Justice. I did have a question about the officers and the reason for their inclusion in the complaint. Yes, Your Honor. The defendants sued are those defendants who have authority, responsibility, and do engage in enforcement over the school districts where individual students attend or would be on school grounds. In South Carolina, each of these police departments supplies police officers to those school districts as school resource officers. In South Carolina, those officers have statewide jurisdiction specially, which means not only that they can police the entire school district where plaintiffs attend school and may be at different parts of the district, but in fact that their jurisdiction is statewide. And so each of those defendants plays a role in enforcing these statutes and creating the risk that plaintiffs face. Thank you. We will come down and greet counsel and take a brief recess. This honorable court will take a brief recess.
judges: Allyson K. Duncan, Albert Diaz, Paula Xinis